UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY ZIMMERMAN,

               Plaintiff,                                   Hon. Ellen S. Carmody

v.                                               Case No. 1:15-CV-1300

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/

**<u>OPINION</u>**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On March 8, 2016, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 7).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## **PROCEDURAL POSTURE**

Plaintiff was 54 years of age on her alleged disability onset date.  (PageID.184).  She earned a Bachelor's Degree in math and chemistry and previously worked as a research scientist.  (PageID.56, 238).  Plaintiff applied for benefits on June 12, 2013, alleging that she had been disabled since October 19, 2011, due to post-concussion syndrome and migraines.  (PageID.184-90, 237).  Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (PageID.104-78).  On March 14, 2014, Plaintiff appeared before ALJ James Prothro with testimony being offered by Plaintiff and a vocational expert.  (PageID.51-98).  In a written decision dated June 6, 2014, the ALJ determined that Plaintiff was not disabled.  (PageID.33-46).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (PageID.18-20).  Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

3

## RELEVANT MEDICAL HISTORY

In 1981, Plaintiff underwent AVM resection surgery.[1]  (PageID.295).  There is nothing in the record suggesting that Plaintiff experienced any further symptoms or detriment from this condition following this surgery.

On October 18, 2011, Plaintiff "fell approximately 7 steps" and "hit the back of her head."  (PageID.295).  Plaintiff did not lose consciousness following this event, but nevertheless reported to a hospital.  (PageID.295).  The results of a CT scan were unremarkable and Plaintiff was found to be "neurologically stable."  (PageID.295).  On November 3, 2011, Plaintiff participated in a CT scan of her head the results of which revealed "stable appearance of the head without any evidence of acute intracranial processes."  (PageID.409).

On February 27, 2012, Plaintiff participated in a neuropsychological evaluation at Mary Free Bed Rehabilitation Hospital.  (PageID.445-50).  The examination revealed that Plaintiff was only "marginally limited" and was "doing well with basic tasks."  (PageID.446).  The examiner reported that Plaintiff's symptoms "improved with physical therapy, though she is still experiencing some mild symptoms."  (PageID.446).  The examiner reported that she "did not find any evidence of pervasive cognitive impairment."  (PageID.447).  The examiner concluded that Plaintiff could return to work.  (PageID.449).

Treatment notes dated August 30, 2012, indicate that Plaintiff's cerebellar function was "intact."  (PageID.407).  On September 7, 2012, Plaintiff participated in an EEG examination

---

[1]  AVM refers to an Arteriovenous Malformation, "an abnormal tangle of vessels" in the brain which can "rupture and bleed into the brain."  *See* Arteriovenous Malformations (AVM), available at http://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/cerebrovascular/conditions/arteriovenous_malformations_avm.html (last visited on August 17, 2016).  An AVM can be treated in several ways, the "most established" of which is surgical resection in which the AVM is removed from the brain.  *Id.*

4

the results of which were "within normal limits" with "no epileptogenic or paroxysmal activities."

(PageID.402).

On April 27, 2013, Plaintiff was examined by James Lozer, Ed.D.  (PageID.438-43).

With respect to Plaintiff's activity level, the doctor observed:

> She is independent in her self care.  A typical day has her rising about 5 A.M. and retiring about 8 P.M.  Once up for the day, "I get up, take that damn thyroid pill, read, do laundry, bake bread, pay bills, make breakfast for my daughter, get her out the door, sew or play in my garden, lay down about an hour, pick up the house, make lunch, read, look at daughter's homework, eat dinner with husband, fall asleep about 8 PM."

(PageID.440).

Dr. Lozer concluded:

> In my opinion, the claimant would be able to engage in full time competitive work in a less stressful occupation with fewer demands from a psychological point of view.  It is important for her to continue her counseling to help her cope with the loss of her job. Alternative treatments such as Yoga, meditation and massage may also help decrease her physical symptoms.
>
> The claimant, from a psychological view point, she has no limitation in her ability to perform and sustain work related functions, no limitation in her ability to understand and remember simple instructions, mild limitation in her ability to sustain concentration and persistence in tasks, and no limitation in her ability to interact appropriately socially.

(PageID.443).

5

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[2]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) post-concussive syndrome, status-post mild to moderate concussion; (2) migraines; (3) caffeine intoxication and overuse; (4) cannabis abuse; (5) sleep apnea; and (6) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.35-37). With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform medium work subject to the following limitations: (1) she can occasionally climb and balance; (2) she should avoid concentrated exposure to workplace hazards such as unprotected heights and dangerous machinery; and (3) she is able to perform semi-skilled work. (PageID.37).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 59,200 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.87-90). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

## I.        Plaintiff does not Satisfy Listing 12.02

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that she satisfies the requirements of Section 12.02 of the Listings which provides as follows:

> 12.02 Organic Mental Disorders: Psychological or behaviorial abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> > A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

8

1. Disorientation to time and place; or

2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or

3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or

4. Change in personality; or

5. Disturbance in mood; or

6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or

7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C.  Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.  Repeated episodes of decompensation, each of extended duration; or

2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.02.

Plaintiff bears the burden to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). An impairment satisfies a listing, however, "only when it manifests the specific findings described in all of the medical criteria for that particular impairment." *Lambert v. Commissioner of Social Security*, 2013 WL 5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)).

Plaintiff argues that she satisfies this Listing because she suffered a loss of at least 15 IQ points following a concussion she suffered in 2011. Plaintiff's argument fails for two reasons. First, the record that was before the ALJ fails to substantiate that Plaintiff's IQ diminished following her October 18, 2011 fall. Testing performed on February 27, 2012, indicated that Plaintiff possessed an IQ of 95. (PageID.377). However, Plaintiff fails to identify any evidence in the record

10

to support the conclusion that Plaintiff's IQ was ever evaluated, prior to her injury, at 110 or higher. Plaintiff attempts to navigate this shortcoming by submitting with her reply brief what is purported to be a copy of her "secondary school record." (PageID.525). This document appears to suggest that IQ testing performed when Plaintiff was 14 years of age revealed that she possessed an IQ of 116. (PageID.525). As Plaintiff acknowledges, however, this evidence was never presented to the ALJ.

It is well recognized that this Court cannot consider new evidence unless Plaintiff demonstrates that the evidence is new and material, and that good cause existed for not presenting it to the ALJ. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). Even if the Court assumes that there exists good cause for Plaintiff's failure to obtain this evidence and present it to the ALJ, Plaintiff cannot establish that consideration of this evidence would have led to a different result.

As noted above, even if it is assumed that Plaintiff's IQ diminished by 15 points following her injury, Plaintiff must also demonstrate that such resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. Plaintiff does not even bother to argue that she can make this showing. Moreover, even had Plaintiff argued that she satisfied this particular criteria, the evidence discussed above belies any such argument. In sum, Plaintiff cannot satisfy her burden to establish that she meets the requirements of this Listing.[3]

---

[3] Plaintiff also argues that she is entitled to relief because the attorney representing her before the ALJ failed to obtain evidence supporting her claim that her IQ decreased, following her injury, by 15 points. This argument is rejected. There is no right to the effective assistance of counsel before the ALJ. *See, e.g., Meadows v. Astrue*, 2012 WL 5205798 at *4-5 (N.D. Ohio, Sept. 25, 2012). Furthermore, as discussed above, even had counsel procured the evidence in question the result would have been

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  October 5, 2016                                      /s/ Ellen S. Carmody
                                                                         ELLEN S. CARMODY
                                                                         United States Magistrate Judge

---

the same because Plaintiff cannot satisfy the other requirements of the Listing.